UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JILL M. BURNHAM,                              )
                                              )
    Plaintiff                                 )
                                              )
v.                                            )   1:11-cv-00246-GZS
                                              )
SOCIAL SECURITY ADMINISTRATION                )
COMMISSIONER,                                 )
                                              )
    Defendant                                 )

## REPORT AND RECOMMENDED DECISION

Plaintiff Jill Burnham has applied for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Burnham is slightly over 30 and suffers from lumbar degenerative disk disease and a history of polysubstance abuse. The Commissioner concluded that Burnham still has the residual functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of her applications. Burnham filed this action to obtain judicial review of the final administrative decision, arguing that the Commissioner failed to account for the vocational impact of symptoms she experiences as a result of depression and post-traumatic stress disorder. In addition, Burnham complains of the quality of the hearing transcript and makes an argument that her spinal condition satisfies a listing. I recommend that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the January 20, 2011, decision of Administrative Law Judge Kim Griswold because the Decision Review Board did not complete its review

during the time allowed. The ALJ's decision tracks the familiar, five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920. (Docs. Related to Admin. Process, R. 1-22, Doc. No. 8-2.[1])

At step 1 of the sequential evaluation process, the ALJ found that Burnham met the insured status requirements of Title II through the date of decision and that Burnham has not engaged in substantial gainful activity since August 8, 2008, the amended date of alleged onset of disability. (R. 9, ¶¶ 1, 2.) At step 2, the ALJ found that Burnham has the following severe physical/mental impairments: lumbar degenerative disk disease and polysubstance abuse. (R. 10, ¶ 3.) The ALJ found that the evidence did not support a finding of severe depression and post-traumatic stress disorder because there are no objective medical signs and laboratory findings and the existence of the disorders would have to be based on "symptoms alone." (R. 11, ¶ 3.) The ALJ identified evidence of domestic violence counseling, but found that none of the treatment providers (a professional counselor, nurse practitioner, and a social worker) was an acceptable medical source for social security purposes. (R. 11-12.)

At step 3, the ALJ found that Burnham's lumbar degenerative disk disease did not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. In particular, the ALJ considered Listing 1.04, disorders of the spine, but she did not articulate why Burnham's condition did not meet or equal the listing. (R. 12, ¶ 4.)

Prior to further evaluation at steps 4 and 5, the Judge assessed Burnham's residual functional capacity. The Judge found that Burnham's combined impairments restrict her to light work, standing/walking for 4 hours in an 8-hour workday, and sitting for 6 hours in the workday, provided there is freedom to alternate between sitting and standing at will. Additional postural

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

2

and environmental restrictions also apply. (R. 12, ¶ 5.) This degree of limitation precludes Burnham from returning to her past relevant work, for purposes of step 4. (R. 19, ¶ 6.)

Burnham was born in 1980 and therefore qualifies as a younger individual. (R. 19, ¶ 7.) She has a general education, or equivalency, diploma (GED), and can communicate in English. (R. 20, ¶ 8.) The Judge presented a vocational expert with this vocational profile and the residual functional capacity findings and found, consistent with the vocational expert's hearing testimony, that Burnham could still engage in other substantial gainful employment, including in occupations identified as Cashier II, Toll Collector, and Ticket Seller. (R. 20-21, ¶ 10.)

### DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

Burnham argues that the Judge erred in finding that Burnham's degenerative disk disease does not meet Listing 1.04. (Statement of Errors at 17-18.) The bulk of Burnham's challenge, however, is directed at the finding that her depression and PTSD are not medically determinable impairments. (Id. at 4-12.) Burnham argues that the record lacks substantial evidence in support of the ALJ's step 2 finding because the ALJ never referred the issue to a medical expert. (R. 10-11.) Burnham asserts that the representative occupations cited by the ALJ for purposes of the step 5 finding are all reasoning level 3 and maintains that fair treatment of her mental limitations would preclude mental functioning at that level on a sustained basis. (R. 11-12.) Burnham cites evidence describing her unfortunate history of being the victim of domestic violence, which she relates to both her physical limitations and her mental limitations. Burnham emphasizes a particularly violent assault by a domestic partner in 2008, which assault corresponds with her amended onset date. (Id. at 2-4.) Burnham also complains of the poor quality of the hearing transcript. (Id. at 13-17.)

The Court must affirm the administrative decision so long as it applies the correct legal

standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

### A. Listing 1.04, Disorders of the Spine

Impairments identified as "severe" at step 2 are measured at step 3 against the Commissioner's Listing of Impairments to determine if they are severe enough to automatically qualify for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); Singh v. Apfel, 222 F.3d 48, 451 (8th Cir. 2000) ("If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments . . . or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience."). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

> The ALJ's consideration of this specific issue is limited to the following:
>
> The claimant's Lumbar Degenerative Disc Disease not [sic] meet or equal Listing l.04, as set forth in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404. 1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). This finding is supported by the objective evidence of record, particularly, the objective medical evidence of record.

4

(R. 12, ¶ 4.) Burnham contends that her lumbar degenerative disk disease satisfies Listing 1.04. Listing 1.04 calls for the following showing from Burnham: "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Appendix 1 to 20 C.F.R. Part 404, Subpart P, Listing 1.04(A).[2] Burnham identifies the following evidence: (1) objective evidence of low back and right thigh pain with a history of an L4-5 disc herniation, and MRI evidence showing a disc protrusion, central and right paracentral with mass effect on the traversing L5 nerve root (R. 358); (2) low back pain that extends down her right leg as far as her knee (R. 355); (3) a "questionable positive straight leg raise on her right side recreating her posterior leg pain to the knee" (R. 306); and (4) positive seated and supine straight leg raises on the right with retention signs that are augmented with Bragard maneuver and slump test (R. 313).

Although the ALJ did not discuss the issue, the evidence cited by Burnham does not include a finding of sensory or reflex loss or atrophy with associated muscle weakness. The evidence does not "meet" the listing and Burnham fails to explain how these findings can "equal" the listing. As the Commissioner observed at oral argument, the physical RFC form supplied by the consulting expert, Richard Chamberlin, M.D., tends to reinforce the inference that Burnham's spinal condition neither meets nor equals Listing 1.04. That is a fair assertion, in my view, at least where Burnham has not identified evidence indicating the presence of all necessary elements of the listing and there is no contrary expert opinion of record. On this record, the ALJ's failure to elaborate on the basis for her step 3 finding does not justify reversal.

---

[2] Burnham does not point to any evidence of spinal arachnoiditis or pseudoclaudication, which rules out subsections B or C of Listing 1.04.

## B. The Degree of Mental Health Impairment

The ALJ found that the medical records associated with PTSD and depression do not indicate the existence of a medically determinable impairment. Burnham says this finding is not supported by substantial evidence.

At step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant's burden at step 2 is a *de minimis* burden, designed simply to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the Commissioner may make a determination at step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124.

Only medical evidence may be used to support a finding that an impairment is severe at step 2. 20 C.F.R. §§ 404.1528, 416.928. The Commissioner's regulations explain: "Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." Id. §§ 404.1508, 416.908. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and

laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96-7p, 1996 SSR LEXIS 4, *1, 1996 WL 374186, *1. "Symptoms are [a claimant's] own description of [his or her] physical or mental impairment." 20 C.F.R. §§ 404.1528(a), 416.928(a). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." Id. By contrast: "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." Id. §§ 404.1528(b), 416.928(b).

In addition to these requirements, a claimant must demonstrate the existence of an impairment with "evidence from acceptable medical sources." Id. §§ 404.1513(a), 416.913(a). The list of acceptable medical sources does not include licensed clinical social workers. It does include physicians, but expects their reports will include clinical findings. Id. §§ 404.1513(a), (b), 416.913(a), (b).

Burnham argues that her mental impairment has been evaluated by Stephen Hull, M.D., and Douglas Buxton, M.D., and that her traumatic history has been noted in treatment records prepared by physicians at York Hospital who treated her in relation to the 2008 assault. (Statement of Errors at 5, citing Ex. 13F, R. 337, 346, 357, Doc. No. 8-8; Ex. 9F, R. 314-15, Doc. No. 8-7; Ex. 2F, R. 259-82, Doc. No. 8-7.) According to Burnham, these record sources suffice to meet the regulatory definition of a medical opinion under subsection (a)(2) of 20 C.F.R. §§ 404.1527, 416.927. (Id. at 6.) Burnham also contends that mental health impairments like depression and PTSD are routinely diagnosed based on subjective reports of symptoms. She says it was error for the ALJ to treat her mental health impairment as not medically determinable under these circumstances. (Id. at 9-10.)

7

The medical records that Burnham cites in support of her challenge reveal a course of pain management treatment by physicians at Mercy Hospital in Portland, with an indication in these records that Burnham was "previously diagnosed with posttraumatic stress disorder, not currently under treatment" (Ex. 13F, R. 337) and indicating as part of a therapeutic plan that Burnham pursue a "psychiatric consultation at McGeachy Hall" (R. 338), a mental health center apparently affiliated with Maine Medical Center. (See also Ex. 17F, R. 400, Doc. No. 8-8.) The records that may, or may not, be the McGeachy Hall records reflect a diagnosis of post-traumatic stress disorder from a licensed clinical social worker. (Ex. 19F, R. 419, Doc. No. 8-9.) More recently, Dr. Buxton indicated in his January 2010 consultation report that he scheduled Burnham "for follow up with a psychologist . . ., which I think is most valuable with regard to her depression-type symptoms." (Ex. 9F, R. 315, Doc. No. 8-7.) In addition to this notation, Burnham received domestic violence counseling from a professional counselor from November 2008 through June 2009. (Ex. 11F, R. 321.) Burnham cites hospital emergency records associated with a 2008 assault (Ex. 2F), but these simply establish the occurrence of trauma. There is no related mental health diagnosis. On this record, the ALJ did not err in concluding that Burnham lacks a diagnosis of depression or PTSD from a medically acceptable source.

Burnham argues that the ALJ should have referred her for a consultative examination by a certified psychologist or called a medical expert to address Burnham's mental health condition at the hearing. (Statement of Errors at 10-11.) The ALJ has discretion in this regard. 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). A review of the Commissioner's "disability related development" files (Doc. No. 8-6) reveals that Burnham

8

pursued her applications without assistance from a representative and obtained counsel only before the administrative hearing. Nevertheless, her own function report, dated March 20, 2009, does not include a reference to any mental condition, only to back pain. Additionally, Burnham denies having a problem with attention or having any unusual behaviors or fears. She reports getting along fine with authority figures and says she handles stress and changes in routine quite well. (Ex. 6E, R. 221-22.) In July 2009, Burnham supplied another disability report. The report form queried whether Burnham had "any new physical or mental limitations." (Ex. 8E, R. 228.) Burnham responded "Yes," but only described new symptoms related to pain in her legs. (Id.) In a final disability report of December 14, 2009, Burnham indicated that she did not have any mental limitations. (Ex. 10E, R. 236.) Burnham's mental health was first raised by counsel in his brief to the ALJ, dated November 23, 2011, (Ex. 11E, R. 245-246), shortly ahead of the November 29, 2010, hearing. However, there was no request for a consultative examination. Nor did counsel make any use of the limited medical records related to mental health in the course of his questioning of Burnham or the vocational expert during the course of the hearing. The sum total of Burnham's testimony on this issue was that she experiences some flashbacks and nightmares related to the assault in 2008. (Hr'g Tr. at 27, R. 56, Doc. No. 8-2.) None of the questioning was directed at any of the mental functions associated with unskilled work. In effect, none of Burnham's subjective representations in her disability reports or her hearing testimony suggests the presence of work-related mental difficulties.

While the ALJ bears a responsibility to develop the record, a remand directing a consultative examination would require a solid showing that the ALJ abused her discretion in that regard. Abuse of discretion has been said to exist where a referral to an expert is necessary to the disability determination or where the failure to refer unfairly prejudiced the claimant.

Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987); Salazar v. Comm'r of Soc. Sec., 372 Fed. Appx. 64, 67 (11th Cir. 2010) (unpublished); Bishop v. Barnhart, 78 Fed. Appx. 265, 268 (4th Cir. 2003). Burnham fails to show that it was legal error for the ALJ to base her step 2 finding on the absence of findings from an acceptable medical source; an issue for which Burnham bears the burden of proof. Burnham also fails to demonstrate unfair prejudice in the failure to refer her for consultative examination in light of the representations made by Burnham in her disability report and the absence of any subjective complaints of work-related mental health symptoms.

## C. Hearing Transcript

Lastly, Burnham argues that remand is necessary due to the poor quality of the hearing transcript. A review of the transcript and Burnham's arguments fails to underscore a deficit in the transcript that would prove material to review of the matters discussed above. For that reason, this additional argument does not warrant remand.

### CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 15, 2012